NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MOURAD DAAMI, <br><br> Plaintiff, <br><br> vs. <br><br> ALBERTO R. GONZALES, MICHAEL CHERTOFF, EDUARDO AGUIRRE, JR., DISTRICT DIRECTOR ANDREA QUARANTILLO, ROBERT S. MUELLER, III, and PORTER J. GOSS, <br><br> Defendants. | Civil Action No. 05-3667 (KSH) <br><br><br><br><br><br><br><br> **OPINION** |

**KATHARINE S. HAYDEN, U.S.D.J.**

**I.   INTRODUCTION**

Plaintiff Mourad Daami (hereafter, "plaintiff" or "Daami") has filed a petition for a writ of mandamus, seeking to compel the Bureau of Citizenship and Immigration Services (hereafter, "CIS") to adjudicate his application for naturalization and to schedule his Oath Ceremony so that he may become a naturalized citizen of the United States.  The defendants move to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  Alternatively, defendants ask the Court to remand the matter back to CIS for final determination of Daami's application for naturalization.

1

## II. MOTION TO DISMISS STANDARD

Unlike a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) in which this Court must accept all allegations in the complaint as true, Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997), when considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortensen v. First Federal Sav. and Loan Ass'n., 549 F.2d 884, 891 (3d Cir. 1977). The Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc., 673 F.2d 700, 711 (3d Cir. 1982). Moreover, plaintiff bears "the burden of proof that jurisdiction does in fact exist." Mortensen v. First Federal Sav. and Loan Ass'n., 549 F.2d at 891.

## III. BACKGROUND

As indicated, the Court will not presume the truthfulness of the allegations in the complaint. However, some background details will be taken from the complaint where such details will not weigh on the issue of subject matter jurisdiction presently before this Court.[1]

Plaintiff is a citizen of Tunisia and has been a lawful permanent resident of the United States since May 17, 1996. (Complaint ¶¶ 4-5.) He applied for naturalization on June 1, 2002 by

---

[1] The Court notes that the Homeland Security Act of 2002 transferred the functions of the Immigration and Naturalization Service (hereafter, "INS") to CIS on November 25, 2002. Homeland Security Act, Pub. L. No. 107-296, § 451 (codified at 6 U.S.C.A. § 271). Because this occurred during the pendency of plaintiff's case, some parts of the record refer to the INS, while some parts refer to CIS. For accuracy, the Court will use the terms as used in the record, mindful that references to the INS are outdated and the country's immigration and naturalization services are now handled by CIS.

filing Form N-400, Application for Naturalization, and paying the requisite fee. (Complaint ¶ 7.) He received a receipt for the application from the INS on June 7, 2002. (Complaint Exhibit B.) On May 8, 2003, plaintiff was interviewed by INS Officer Ruiz. (Complaint Exhibit C.) Soon thereafter, he received a form letter from the INS, indicating that he had passed the tests of English and U.S. history and government and that his application had been recommended for approval. (Id.) However, the letter also stated that "[a] decision cannot yet be made about your application" and "[if] final approval is granted, you will be notified when and where to report for the Oath Ceremony." (Id.) Plaintiff apparently contacted INS (and later, CIS) on numerous occasions to check the status of his naturalization application. (Complaint ¶ 9.) He alleges that he was told on one occasion that his application was "stalled due his security checks," and on another occasion was simply told that his background check was still "pending." (Id.)

Plaintiff argues in his complaint that the defendants have "no legal basis for failing to proceed" with his naturalization, and that they have "refused to completely adjudicate the application." (Complaint ¶¶ 13, 1.) He claims that the defendants are in violation of the Immigration and Nationality Act, 8 U.S.C. § 1446, because they have not adjudicated his application "as required by federal statute." (Complaint ¶ 21, 1.) He also claims that the defendants are in violation of the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*, because they have "failed to carry out the adjudicative functions delegated to them by law." (Complaint ¶ 22.) He has sued defendants pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201; the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*; and the Mandamus Act, 28 U.S.C. § 1361, for relief compelling the defendants to adjudicate his application for naturalization. (Complaint ¶ 2.) He also seeks costs and attorney fees pursuant to 28 U.S.C. § 2412(d) and the

3

Equal Access to Justice Act, 5 U.S.C. § 504. (Complaint ¶ 3.)

Defendants' motion argues that this Court lacks subject matter jurisdiction over plaintiff's claim because the 120 day period that CIS has to make a decision on plaintiff's application does not begin to run until the entire examination process is complete. (Moving Brief at 9.) They claim that plaintiff's application has been delayed because the Federal Bureau of Investigation ("FBI") has not yet completed the background check on plaintiff, the request for which was submitted to the FBI on December 15, 2002. (Moving Brief at 1; Cannon Declaration ¶ 21.)

In their moving brief and in the supporting declaration by Michael A. Cannon, the Section Chief of the FBI National Name Check Program, the defendants claim that in November 2002, pursuant to security concerns stemming from the attacks on the United States on September 11, 2001, the background check procedures then utilized by CIS were reviewed and it was determined that a more detailed, in-depth clearance procedure was required. (Moving Brief at 4; Cannon Declaration ¶ 17.) As a result, CIS resubmitted 2.7 million name check requests to the FBI in addition to the regular name check requests. (Moving Brief at 4; Cannon Declaration ¶ 18.) Prior to September 11, 2001, the FBI processed approximately 2.5 million name check requests *per year*. (Moving Brief at 3; Cannon Declaration ¶ 16.) Plaintiff's name was among the 2.7 million re-submissions, and his name check has yet to be completed. (Cannon Declaration ¶ 21.) Defendants argue that because plaintiff's FBI background check is not yet complete, CIS is unable to make a final decision on plaintiff's naturalization application. (Moving Brief at 6-8.)

In opposition, plaintiff argues that according to regulations, once an initial examination is conducted, CIS has 120 days to make a decision to grant or deny a naturalization application.

4

(Opposition Letter Brief at 1.)  Plaintiff relies on 8 C.F.R. § 335.3(a), which states that "[t]he Service officer shall grant the application if the applicant has complied with all requirements for naturalization under this chapter.  A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2."  (Opposition Letter Brief at 1.)  The import of this provision is in dispute: defendants claim that the "examination" is not complete until the entire examination process is complete, and that until CIS receives the FBI report of the applicant's background check, the 120 days has not yet begun to run.  (Moving Brief at 9-10.)

**IV.    DISCUSSION**

    **A.  Subject Matter Jurisdiction**

It is fundamental that the subject matter jurisdiction of the federal courts is limited. Page v. Schweiker,  786 F.2d 150, 153 (3d Cir. 1986).  A federal court has "only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."  Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986).  "[J]udicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999), quoting INS v. Abudu, 485 U.S. 94, 110 (1988).  Defendants argue that 8 U.S.C. § 1447(b) does not give this Court jurisdiction over the instant matter because the "examination" of plaintiff has not yet been concluded and so the 120 day period before the district court may take jurisdiction has not yet begun to run.  (Moving Brief at 9-10.)

    According to 8 U.S.C. § 1447(b),

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C.A. § 1447 (b).

Section 1446 governs the examination portion of the naturalization process, and provides, in pertinent part:

> (b) Conduct of examinations; authority of designees; record
>
> The Attorney General shall designate employees of the Service to conduct examinations upon applications for naturalization. For such purposes any such employee so designated is authorized to take testimony concerning any matter touching or in any way affecting the admissibility of any applicant for naturalization, to administer oaths, including the oath of the applicant for naturalization, and to require by subpena the attendance and testimony of witnesses, including applicant, before such employee so designated and the production of relevant books, papers, and documents, and to that end may invoke the aid of any district court of the United States . . . .
>
> . . .
>
> (d) Determination to grant or deny application
>
> The employee designated to conduct any such examination shall make a determination as to whether the application should be granted or denied, with reasons therefor.

8 U.S.C.A. § 1446.

The Code of Federal Regulations (hereafter, "CFR") further addresses district court review of a naturalization application as follows:

> (a) After 120 days following examination. An applicant for naturalization may seek judicial review of a pending application for naturalization in

> those instances where the Service fails to make a determination under section 335 of the Act within 120 days after an examination is conducted under part 335 of this chapter. An applicant shall make a proper application for relief to the United States District Court having jurisdiction over the district in which the applicant resides. The court may either determine the issues brought before it on their merits, or remand the matter to the Service with appropriate instructions

8 C.F.R. § 310.5.

Section 335 of the CFR, as referred to above, addresses the examination of an applicant prior to naturalization, as follows:

> (a) General. Subsequent to the filing of an application for naturalization, each applicant shall appear in person before a Service officer designated to conduct examinations pursuant to § 332.1 of this chapter. The examination shall be uniform throughout the United States and shall encompass all factors relating to the applicant's eligibility for naturalization. . . .
>
> (b) Completion of criminal background checks before examination. The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application only after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed.

8 C.F.R. § 335.2.

Defendants argue that – pursuant to § 335.2(b) – because the FBI background check has not been completed, the "examination" in this case has not even begun. (Moving Brief at 8.) They make this argument even though it is undisputed that plaintiff has already had an "initial examination" with a service officer. The Court finds that this is a strained, inverted reading of this regulation, which plainly specifies that CIS should only bring in applicants for the initial examination "*after* the Service has received a definitive response" from the FBI that the background check is completed. The facts demonstrate that CIS did not follow its own

7

regulation and brought this plaintiff in for his initial examination with a service officer *before* it received a definitive response that the FBI check was completed. However, it does *not* follow, as defendants inferentially argue, that the failure of CIS to comply with one regulation entitles it to toll the 120 day period specified in another regulation.

On its face, § 1447(b) gives this Court jurisdiction over plaintiff's naturalization application[2] if CIS fails to make a determination within 120 days of the "date on which the examination is conducted under [section 1446]." However, the Court has not found any appellate decision that specifically discusses at what specific point § 1447(b) comes into play and when the 120 day period begins for the purposes of district court jurisdiction.

The defendants' argument relies upon the decision in Danilov v. Aguirre, 370 F.Supp. 2d 441 (E.D. Va. 2005), where plaintiff sued on February 3, 2005 to compel CIS to act on his February 18, 2003 naturalization application. Id. at 442. That plaintiff was interviewed by CIS on January 9, 2004, and argued that the 120 day period for purposes of district court jurisdiction began immediately after that interview. Id. The defendants in that case argued that they could not begin to make a decision on plaintiff's application until the FBI background investigation was completed, which didn't occur until March 24, 2005, after the district court case was filed. Id. at 443. The court held that the 120 day period under § 1447(b) did not begin to run until all parts of the "examination process" had been completed, including the FBI background check. Id. at 444. The court explained that "an examination is not a single event, but instead is essentially a *process* the agency follows to gather information concerning the applicant." Id. at

---

[2] The complaint alleges that plaintiff is a resident of New Jersey (Complaint ¶ 30), and defendants have not disputed this allegation.

443 (emphasis in original).

This decision stands alone among reported cases on this issue. The majority position is that the word "examination" in § 1447(b) refers to the date of the examination interview with a CIS officer, and not the entire "examination process." See, e.g., El-Daour v. Chertoff, 417 F.Supp.2d 679 (W.D.Pa. 2005); Essa v. U.S. Citizenship and Immigration Services, 2005 WL 3440827 (D.Minn. 2005); Al-Kudsi v. Gonzales, 2006 WL 752556 (D.Or. 2006); Shalan v. Chertoff, 2006 WL 42143 (D.Mass. 2006).

The Court is satisfied that the majority position makes sense for several reasons. First, § 1447(b) states that the 120 day period begins to run on "the date on which the examination is conducted," strongly implying that there is *one* date on which the examination takes place. If Congress had intended this period to run after the completion of an entire, possibly lengthy examination process, it could have easily worded the statute to reflect that intention. It is a "cardinal rule[] of statutory interpretation" that the "plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." National Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B., 28 F.3d 376, 384 (3d Cir. 1994), quoting United States v. Ron Pair Enter. Inc., 489 U.S. 235, 242 (1989) (internal quotations omitted). The defendants have not presented any evidence from the legislative history of this statute to counteract this cardinal rule.

Second, there is the plain language of § 1446. Section 1446(a) discusses the investigation of applicants, stating, in pertinent part, "[b]efore a person may be naturalized, an employee of the Service, or of the United States designated by the Attorney General, shall conduct a personal

9

investigation of the person applying for naturalization." Sections 1446(b), (c), and (d) discuss the examination separately from the investigation discussed in § 1446(a). The plain meaning of this separation of sections is that the investigation is separate from the examination. Also, the Court notes that § 1446 is entitled, "Investigation of applicants; examination of applications." While the Court is mindful that "titles and section headings cannot limit the plain meaning of statutory text where that text is clear," M.A. ex rel. E.S. v. State-Operated School Dist. of City of Newark, 344 F.3d 335, 348 (3d Cir. 2003), in this case the section heading does not limit the meaning of the statutory text, and supports this Court's interpretation that the overall investigation of the applicant is separate and distinct from the examination of the applicant.

Third, the implementing regulations differentiate between the "examination" and the "criminal background checks," which weakens the argument that the examination *includes* the criminal background checks. For example, 8 C.F.R. § 335.2(b) is entitled "Completion of criminal background checks before examination," and specifically states that the FBI background check must be completed *before* the applicant is notified to appear for his or her "examination on the naturalization application." 8 C.F.R. § 335.2(b). As another example, § 335.3(b) allows the Service officer to "continue the initial examination on an application for one reexamination, to afford the applicant an opportunity to overcome deficiencies on the application that may arise during the examination." The Court understands this to mean that there is an initial examination, after which there may be "one reexamination." If "examination" means the entire "examination process," as defendants contend, there would be no purpose in Congress specifically allowing "one reexamination" to overcome deficiencies in the application, unless the Service intends to redo the entire examination process one time whenever there are deficiencies in the application.

10

It strains credulity to imagine that Congress intended the Service to perform the entire examination process *twice* for every applicant whose application is somehow deficient.

Fourth, another section of the CFR states in part: "A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2." 8 C.F.R. § 335.3(a). By its express terms, this code section instructs the Service that the 120 day period begins to run after the *initial* examination, and not after the conclusion of the entire examination process. As the defendants point out, an agency's interpretation of a statute that it is charged to administer is given "considerable weight." Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984). Moreover, "such legislative regulations are given *controlling weight* unless they are arbitrary, capricious, or manifestly contrary to the statute." Id. (emphasis added).

The Court recognizes the predicament created by the following statute, which does not allow CIS to use its funds to complete adjudication of naturalization applications until the FBI background check is completed:

> [D]uring fiscal year 1998 and each fiscal year thereafter, none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed, except for those exempted by regulation as of January 1, 1997.

Pub. L. 105-119, 111 Stat. 2448-2449 (1997). Absent the completion of the background check, CIS cannot use any of its funds to adjudicate the application. In practice, that means that the application will be placed "on hold" until the background check is complete. If CIS does not make a decision within 120 days, and the applicant applies to the district court for relief, the

court is in the same position as CIS – unable to make a decision on a naturalization application until all the facts are in, including the background check from the FBI.

Notwithstanding, this Court joins the majority of reported cases and holds that inasmuch as 120 days have passed since this plaintiff's "examination," and CIS has not made a determination as to his application, the Court has jurisdiction pursuant to § 1447(b). The defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

The Court remands to CIS pursuant to 8 U.S.C.A. § 1447(b), with instructions that it promptly adjudicate plaintiff's application upon receipt of the completed background check from the FBI.

## V.  CONCLUSION

Based on the foregoing, the defendants' motion to dismiss for lack of jurisdiction is **denied.**  The defendant's request to remand to CIS is **granted**.  An appropriate order will be entered.

**Dated: May 22, 2006**

/s/ Katharine S. Hayden
**Katharine S. Hayden**
**United States District Judge**